UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

ALEX M. MANOLOV,                                         :

                       Plaintiff,                       :

         - against -                         :

BOROUGH OF MANHATTAN COMMUNITY          :
COLLEGE,
                                     :

                   Defendant.                       :

                                     :

----------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___12/20/12____

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
<u>GEORGE B. DANIELS</u>**

12 Civ. 1919 (GBD) (FM)

**FRANK MAAS**, United States Magistrate Judge.

        Plaintiff Alex M. Manolov ("Manolov"), a former nursing student at Borough of Manhattan Community College ("BMCC" or the "College"), brings this <u>pro se</u> action, alleging that BMCC:  (a) discriminated against him on the basis of race and gender; (b) violated the Fourteenth Amendment by depriving him of his property rights without due process; (c) breached its contract with him; and (d) negligently supervised several BMCC professors.  For these alleged wrongs, Manolov seeks damages in the amount of $930,000.  BMCC has moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1367(c), to dismiss all of Manolov's claims.[1]  For the reasons set forth below, that motion should be granted and this case dismissed.

_____

       [1]      In its initial papers, BMCC incorrectly assumes that Manolov's last name is "Manolou" based upon its counsel's reading of Manolov's handwritten complaint.  (ECF No. 2 ("Complaint" or "Compl.")).  Manolov's subsequent typewritten submission makes it clear that this is a mistake.

I.      Background

The following facts are derived from Manolov's papers, presented in the light most favorable to him and, for present purposes, assumed to be true.

A.      Facts

During the 2011-2012 academic year, Manolov was a student enrolled in BMCC's nursing program.  He failed a fall 2011 semester final exam, allegedly because of the shortcomings of certain BMCC professors, including their (1) failure to cover material appearing on the exam, (2) failure to schedule reviews sufficiently in advance of the exam, and (3) provision of inadequate time to complete the exam.  (See Compl. ¶ III.C & Compl. Attach. ("Attach.") at 1-3).

Rather than preparing the nursing students for the exams, Professor White "routinely spen[t] 30 minutes arguing with the class," then would briefly cover the chapter and instruct the students to "read the book [to] figure out" the answers for themselves. (Attach. at 1).  The pediatrics professor further failed to distribute PowerPoints of her classroom lectures which, in any event, were merely repeats of lectures that had been given for many years.  (Id.).

Manolov and several of his classmates complained to members of BMCC's Nursing Department about these practices, requested that the Department investigate the matter, and specifically asked that another professor compose questions for the final exam. (Id.).  Several students in the College's day nursing program further complained that

Professor White had acted in an unprofessional and dangerous manner toward hospital patients.  (Id.).  These complaints and requests, however, were ignored.  (Id.).

The nursing program exams also suffered from many deficiencies.  On the first pediatrics exam, for example, the multiple choice questions did not include an option to select more than one answer, even though more than one answer often was correct.  (Id.).  Manolov answered all of these questions incorrectly because there was no instruction to "select all that apply."  (Id.) (block capitalization omitted).  The medical-surgical exams similarly were replete with typos, inaccurate statements, and incorrect answer choices.  (Id.).  The third exam of the fall 2011 semester further was cut short, resulting in the students being afforded fifteen minutes less than the allotted time.  Rather than addressing this issue, the professor "tried to blame the class for not monitoring the time."  (Id.).  Because of the shortened time frame, Manolov was unable to finish answering the questions or double check his previous answers.  (Id.).  In response to what had occurred, the professor offered students a choice between two options:  to receive either two additional points for the exam or an extra ten minutes to complete the final exam.  (Id. at 2).

Professor Boyle, who taught pediatrics, told Manolov and other students that they need not memorize a chemical formula for "rehydrating patients" because the information would be provided on the final exam, but then failed to honor her promise.  (Id.).  This caused one out of every three students to answer the question incorrectly and, in Manolov's view, was done "maliciously."  (Id.).

Professor Boyle also awarded and subtracted points on the pediatrics exam "arbitrarily" and "without explanation." (Id. at 1).  Some students received credit for questions to which Manolov provided similar responses, but received no credit.  (Id. at 2).  Indeed, Professor Boyle checked his exam by hand and marked his correct answers (and those of other white males) as incorrect.  (ECF No. 19 (Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss the Compl. ("Opp. Mem.")) at 2).  Upon discovering errors on the Scantron sheet used to grade his exam, Manolov spoke to Professor Boyle, but she refused to give him credit for the correct answers.  (Attach. at 2).  Instead, the professor told Manolov that she did not like him or his attitude, noting that if she awarded him additional points, "she would have to give points to everyone else" as well.  (Id.).  Manolov (and allegedly other students) believe that students were passed based on the professors' "personal preferences," rather than academic achievement.  (Id.).

Manolov had been recognized in the past for high academic achievement by the dean of BMCC's Nursing Department, yet he failed the fall 2011 semester final exam.  (Id.).[2] He attributes his failure on the exam to inaccurate test questions, lack of time to complete the exam, and his professors' arbitrary decisions.  (Id.).  Indeed, fifty percent of the nursing students in his class either failed or were forced to drop the class during that semester because of the professors' actions.  (Id. at 1, 3).  Manolov alleges that Professors White and

---

[2]     Curiously, Manolov also says that his prior average was only 75.5 and that the "requirement to stay in the program [was] 73." (Id.).  Manolov may have been referring to his average for the semester.

Boyle "blatantly discriminated against all white males," including Manolov, and, as a result, "all white males . . . failed the semester." (Opp. Mem. at 2).

Rather than reviewing the results of the final exam before the last day of classes for the semester, as the BMCC nursing program syllabus indicates "should" occur, at least one professor delayed until the first week of the spring 2012 semester. (Attach. at 3). By then, however, it would have been impossible to correct grading errors on the students' exams and permit them to advance in the nursing program. (Id.). A number of nursing students had requested that the exams be reviewed at an earlier date, but those requests were ignored. (Id.). Manolov himself wrote letters to a "CUNY lawyer," BMCC's Dean of Nursing, and a "CUNY counselor," asking that they review the problems associated with the fall 2011 semester exams, but received no response. (Id.). Manolov also spoke to the dean personally about the scheduling issue and grading problems, but was told nothing could be done. (Id.). During that conversation, he asked the dean whether it is normal for half of a class to fail; the dean replied that "the [d]epartment was recommended to decrease the number of nursing students." (Id.). In sum, despite "numerous complaints" that were brought up and down the College's "administrative ladder," BMCC failed to remedy the problems brought to its attention. (Opp. Mem. at 3).

Despite having failed the fall 2011 semester final exams, Manolov re-enrolled in the nursing program during the spring 2012 semester. (Attach. at 3). As the semester began, he learned that his father in the Ukraine had been diagnosed with cancer. (Id.).

Although Manolov initially considered dropping out of BMCC's nursing program for the spring 2012 semester so that he could take care of his father, he ultimately decided that he would continue to take classes.  (Id.).  When he tried to re-enroll in the pediatrics class, however, Professor Boyle, on two occasions, "maliciously removed [him] from the . . . roster" and recommended that he "forget about nursing."  (Comp. ¶ III.C & Attach. at 3).  Boyle further expressed her "personal dislike" for Manolov.  (Opp. Mem. at 3).  It was not until Manolov spoke with the head of BMCC's Nursing Department that he was admitted back into the nursing program.  (Attach. at 3).

Even after Manolov spoke with the head of the Nursing Department and was permitted to re-enroll in classes, Professor Boyle continued to make his life "unbearable." (Id.).  Specifically, she required Manolov to submit "unnecessary paperwork" and repeatedly threatened to remove him from the nursing program.  (Compl. ¶ III.C & Attach. at 3). Professor Boyle accused Manolov of missing the first spring 2012 math exam, even though students were allowed to take the test three times, and she herself had allowed Manolov to retake a fall 2011 semester exam that he had missed.  (Attach. at 3).  Professor Boyle further criticized Manolov for missing the first clinical day, despite the fact that "security issues" had prevented students from visiting the hospital that day.  (Id.).  Professor Boyle also removed Manolov's educational records from the pediatrics class online repository and prevented him from accessing required reading materials for the class, even though other students had access to those materials.  (Id.).  Manolov thus was unable to learn the results of his math exam.  (Id.).  Boyle also demanded that Manolov submit his original name change

form, intimating that he may have forged his signature, and required that he submit numerous

duplicates of immunization forms already in BMCC's files.  (Id. at 4).  Boyle's actions

caused Manolov significant stress.  (Id.).  Ultimately, he was forced to withdraw from the

nursing program for the spring 2012 semester because he knew he could not pass the class

with Professor Boyle as the instructor.  (Id.).

        B.      Procedural History

On March 14, 2012, Manolov commenced this action by submitting his

Complaint to the Court's Pro Se Office.  (See Compl. at 1).  On April 11, 2012, the case was

reassigned to Your Honor, (ECF No. 5), after which it was referred to me for general pretrial

supervision and to report and recommend regarding dispositive motions.  (ECF No. 7).

BMCC then filed its motion to dismiss on June 22, 2012.  (ECF Nos. 14-16).  Manolov filed

his opposition papers on July 10, 2012.  (ECF No. 18 & Opp. Mem.).[3]  On July 20, 2012,

BMCC filed a reply memorandum.  (ECF No. 20).  The motion to dismiss consequently is

fully submitted.

II.     Discussion

        A.      Standard of Review

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief

can be granted tests the legal sufficiency of a plaintiff's claim for relief.  In deciding the

---

      [3]     In addition to his Opp. Mem., Manolov filed a notice of motion for an order
denying BMCC's motion to dismiss.  (ECF No. 18).  That filing is redundant since the only
material submitted in support of the motion is Manolov's memorandum in opposition to
BMCC's motion.

motion, the Court must accept as true all factual allegations made in the complaint and draw all reasonable inferences in favor of the plaintiff.  Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  The complaint need not contain "detailed factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Nonetheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555); see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) ("legal conclusions masquerading as factual averments will not suffice") (quoting Gebhardt v. Allspect, Inc., 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000)).

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  Determining whether the allegations of a complaint nudge a plaintiff's claims across the line from merely "conceivable to plausible" requires the Court to "draw on its judicial experience and common sense."  Id. at 679-80.

Because Manolov is proceeding pro se, the Court must read his pleadings "liberally" and interpret them "to raise the strongest arguments" that they may suggest. Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citing Harris v. City of New York, 607 F.3d 18, 24 (2d Cir. 2010)).  In view of his pro se status, the Court also may rely on Manolov's opposition papers in assessing the legal sufficiency of his claims.  See Flores v. N.Y.C. Human Res. Admin., No. 10 Civ. 2407 (RJH), 2011 WL 3611340, at *1 n.1 (S.D.N.Y. Aug. 16, 2011) ("Because of [plaintiff's pro se status, the Court may consider

factual allegations [plaintiff] makes in her opposition papers, in addition to the allegations in the complaint").  "Dismissal of a <u>pro se</u> complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements."  <u>Carvel v. Ross</u>, No. 09 Civ. 722 (LAK) (JCF), 2011 WL 856283, at *8 (S.D.N.Y. Feb. 16, 2011).

     B.   <u>Discrimination Claims</u>

As his opposition papers explain, Manolov seeks to assert claims under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d) ("Title VI"), and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, <u>et</u> <u>seq.</u> ("Title IX").  (<u>See</u> Opp. Mem. at 4).  Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  Title IX prohibits discrimination on the basis of gender, and states, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

To state a claim under Title VI, a plaintiff must allege, <u>inter alia,</u> (1) that the defendant discriminated against him on the basis of race; (2) that that discrimination was intentional; and (3) that discrimination was a substantial and motivating factor for the defendant's actions.  <u>See</u> <u>Tolbert v. Queens Coll.</u>, 242 F.3d 58, 69 (2d Cir. 2001).  A claim of discrimination under Title IX similarly requires allegations of discriminatory intent.  <u>See</u> <u>Yusuf v. Vassar Coll.</u>, 35 F.3d 709, 712-14 (2d Cir. 1994).  "Under Title IX, a prima facie

case is established by [a plaintiff] showing (1) that she was excluded from participation in (or denied the benefits of, or subjected to discrimination in) an educational program; (2) that the program receives federal assistance; and (3) that the exclusion was on the basis of sex, i.e., gender." Murray v. N.Y. Univ. Coll. of Dentistry, No. 93 Civ. 8771 (LMM), 1994 WL 533411, at *5 (S.D.N.Y. Sept. 29, 1994).  Title VI and Title IX operate in the same manner, except that Title VI prohibits race discrimination in all programs receiving federal funds, whereas Title IX prohibits sex discrimination in education programs.  Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 286 (1998).

       "A plaintiff alleging racial or gender discrimination by a university must do more than recite conclusory assertions.  In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." Yusuf, 35 F.3d at 713.  "Bald assertions and conclusions of law will not suffice." Rodriguez v. N.Y. Univ., No. 05 Civ. 7374 (JSR), 2007 WL 117775, at *5 (S.D.N.Y. Jan. 16, 2007) (quoting Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)).  Furthermore, the Supreme Court has held that when such a discrimination claim fails to implicate the official policy of a defendant, "a damages remedy will not lie . . . unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." Gebser, 524 U.S. at 290.

In his Complaint, Manolov has not stated any <u>facts</u> from which one could infer

discriminatory intent or motivation on the part of BMCC.  Although Manolov contends that

"[t]he facts alleged in the complaint clearly show that the College violated both" Title VI and

Title IX, (Opp. Mem. at 4), the vast majority of the statements in both his Complaint and his

Memorandum of Law are conclusory, rather than factual, allegations.  For example, Manolov

alleges that his professors "blatantly discriminated against all white males," "intentionally

treated all white males, including plaintiff, in an adverse manner by maliciously downgrading

their exams," and that this "blatant mistreatment . . . amounted to an objective hostility."

(Opp. Mem. at 2, 4-5).  Manolov further alleges that the professors created an "adverse

education environment," that he "felt the hostility of the professors towards him because of

his sex," and there was "no reasonable motivation" for the professors' actions "other than

[their] personal dislike and hatred towards [sic] this particular group of students."  (<u>Id.</u> at 5).

These "threadbare recitals" and conclusory allegations of discrimination are

insufficient to establish liability.  <u>Iqbal</u> 556 U.S. at 678.  Nowhere in either the Complaint or

his opposition papers does Manalov allege that any defendant referred to his race or gender,

nor does he recite any other fact from which race- or gender-based discriminatory intent

reasonably could be inferred.  Without such a factual allegation, his discrimination claims

cannot survive a motion to dismiss.  <u>See</u> <u>Sanders v. Grenadier Realty, Inc.</u>, No. 08 Civ. 3920

(WHP), 2009 WL 1270226, at *5 (S.D.N.Y. May 6, 2009) (dismissing Title VI claim

because plaintiffs gave no indication that their "race was accorded special weight" in

determining who received rent subsidies, "thus making it a 'substantial' or 'motivating

factor'"); Scaggs v. N.Y. Dep't of Educ., No. 06 Civ. 0799 (JFB) (VVP), 2007 WL 1456221, at *11 (E.D.N.Y. May 16, 2007) ("A complaint falls short . . . where, as in this case, it 'fails to incorporate any factual allegations that would indicate how . . . race, gender, age, or national origin played a role' in the alleged actions against the plaintiff.") (quoting Valle v. Bally Total Fitness, No. 01 Civ. 11614 (RCC) (KNF), 2003 WL 22244552, at *3 (S.D.N.Y. Sept. 30, 2003)); cf. Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 112-13 (2d Cir. 2001) (granting summary judgment and dismissing Title II discrimination claim because plaintiff, rather than alleging that school discriminated against him because of his learning disability, merely alleged that school denied his request to re-take an exam); Rodriguez, 2007 WL 117775, at *5-6 (dismissing Section 1981 claims because, inter alia, plaintiff failed to allege facts supporting an inference that school was motivated by racial prejudice in disciplining plaintiff); Babiker v. Ross Univ. Sch. of Med., No. 98 Civ. 1429 (THK), 2000 WL 666342, at *4 (S.D.N.Y. May 19, 2000) (granting summary judgment and dismissing Title VI claim because plaintiff's "conclusory allegations are insufficient . . . to give rise to an inference of discrimination").

   Similarly, although he makes the assertion that BMCC professors "intentionally treated all white males . . . in an adverse manner by maliciously downgrading their exams," Manolov has failed to allege any facts suggesting that he or other white males were treated differently than other students.  Indeed, Manolov's factual allegations concern his professors' practices of "habitually start[ing] classes late," "start[ing] exams late," "cut[ting] exams short," failing to "provide education materials," "hand[ing] out exams

containing typos," and "instruct[ing] students not to study specific topics for exams and ask[ing] questions about those very topics." (Opp. Mem. at 2-3). On their face, there is no suggestion that these alleged errors and omissions were limited in impact to a specific subset of nursing students. Accordingly, they cannot provide the basis for a discrimination claim. See Scaggs, 2007 WL 1456221, at *12 (Title VI claim dismissed because complaint failed to allege minority plaintiffs were treated any differently than similarly-situated white children).

In any event, even if Manolov adequately had pleaded discrimination, his apparent failure to notify BMCC officials of the alleged discrimination still would be fatal to his Title VI and Title IX claims. In his Complaint, Manolov alleges that he wrote "letters to the CUNY lawyer, the Dean of Nursing and CUNY Counselor" and "saw the Dean personally." (Attach. at 3). Noticeably absent, however, is any suggestion that any of these communications related to alleged discrimination based on his race or gender. Rather, Manolov states that his letters to, and conversation with, the dean concerned "mov[ing] the review to [an] earlier date," as well as Manolov's belief that a high percentage of students were failing the nursing exams. (Id.).

Without a showing that Manolov's complaints to BMCC officials referenced alleged racial or sexual discrimination, and not merely generic perceived teaching failures, the College cannot be charged with notice of an alleged violation of Title VI or IX. See Goonewardena v. New York, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) (dismissing Title VI claim against CUNY because plaintiff "fail[ed] to allege that he reported any incidents of discrimination to CUNY officials"); Aoutif v. City Univ. of N.Y., No. 05 Civ. 496 (ILG),

2005 WL 3334277, at *4 (E.D.N.Y. Dec. 8, 2005) (plaintiff's failure to allege that she

"notified CUNY authorities of any alleged racial discrimination, or that those authorities

knew of the alleged discrimination and failed to respond," meant she did "not provide[] an

opportunity for an adequate response by the university, and her Title VI claim cannot survive

a motion to dismiss") (citing Crandell v. N.Y. Coll. Of Osteopathic Med., 87 F. Supp. 2d

304, 320 (S.D.N.Y. 2000)); Gonzalez v. Esparza, No. 02 Civ. 4175 (SWK), 2003 WL

21834970, at *3 (S.D.N.Y. Aug. 6, 2003) (dismissing Title IX claim against school board

because plaintiff alleged neither "that any school or [b]oard official with the authority to take

corrective action was actually aware of" the harassment, nor "that the [b]oard [d]efendants

had enough knowledge of the harassment to respond with remedial measures designed to

address the problem"); Crandell, 87 F. Supp. 2d at 306-07 ("educational institutions may be

found liable under Title IX only if an appropriate official at the institution has actual

knowledge of the discrimination") (citing Gebser, 524 U.S. at 290).  Manolov's

discrimination claims consequently must be dismissed.[4]

    C.    <u>Due Process Claim</u>

        Manolov further claims that BMCC violated his Fourteenth Amendment right

not to be deprived of property without due process.  Specifically, Manolov alleges that he has

---

[4]    Even if Manalov's pleadings sufficiently alleged that BMCC officials were on notice of the alleged discrimination, any claim that the College failed to address these issues is belied by Manolov's own Complaint.  Although Manolov alleges that Professor Boyle repeatedly dropped him from the nursing program during the spring 2012 semester, he also notes that he "had to see the head of the Nursing Department to get back [in]to the program."  (Attach. at 3).  He therefore acknowledges that the College responded to his complaints, to the extent it considered them valid, by ensuring that he was permitted to re-enroll in the nursing program.

a property interest in pursuing an education and that, by "twice discharg[ing him] from the class, which was required for [] continuation of his education," without giving him a "valid reason" or "any sort of administrative hearing," the College deprived him of that property interest, thereby violating his constitutional rights.  (Opp. Mem. at 6).

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law."  U.S. Const. Amend. XIV.  Although Manolov does not expressly refer to 42 U.S.C. § 1983 ("Section 1983") in his Complaint, that is the "proper statutory vehicle by which plaintiff could bring" this claim.  Goonewardena, 475 F. Supp. 2d at 316.  Accordingly, Manolov's due process claim against BMCC must be evaluated as a Section 1983 claim.

Recognizing this procedural point, BMCC contends that the City University of New York ("CUNY") is the proper defendant in this case.  (ECF No. 15 at 1 n.1).  The defendant's position is not surprising, as CUNY is immune from Section 1983 claims under the Eleventh Amendment, because its central administration is an arm of the state.  See Goonewardena, 475 F. Supp. 2d at 329 ("As an arm of the State under New York law, CUNY is . . . entitled to Eleventh Amendment immunity from suit in federal court"); Becker v. City Univ. of N.Y., 94 F. Supp. 2d 487, 490 (S.D.N.Y. 2000) (holding that CUNY's central administration is immune because New York State is "ultimately responsible for funding the budget for CUNY's central administration").  Manolov, however,  named BMCC – not CUNY – as the defendant, and New York City bears the financial responsibility for judgments against CUNY community colleges.  See Clissuras v. City Univ. of N.Y., 359

F.3d 79, 82 & n.6 (2d Cir. 2004) (citing N.Y. Educ. Law § 6224(1)); Hester-Bey v. N.Y. City

Technical Coll., No. 98 Civ. 5129 (CPS), 2000 WL 488484, at *3 (E.D.N.Y. Mar. 22, 2000);

see also McKie v. LaGuardia Cmty. Coll., No. 04 Civ. 5555 (RRM), 2008 WL 4489796, at

*3 n.3 (E.D.N.Y. Sept. 30, 2008) (finding, without discussion, that CUNY's LaGuardia

Community College is a "municipal entity subject to liability under 42 U.S.C. § 1983").  The

Eleventh Amendment consequently is not a bar to Manolov's due process claim against

BMCC.

   To establish a procedural due process claim, a plaintiff first must show that he

was deprived of a liberty or property interest.  Bd. of Regents of State Colls. v. Roth, 408

U.S. 564, 571 (1972); Nnebe v. Daus, 644 F.3d 147, 158 (2d Cir. 2011).  If such a

deprivation occurred, the Court then must consider what process was due for the deprivation

and whether it was provided.  Matthews v. Eldridge, 424 U.S. 319, 333-34 (1976); Nnebe,

644 F.3d at 158.

   Under New York law, the "implied contract" between a college and its students

gives rise to a constitutionally-protected property interest.  Oladokun v. Ryan, No. 06 Civ.

2330 (KMW), 2007 WL 3125317, at *4 (S.D.N.Y. Oct. 23, 2007) (citing Branum v. Clark,

927 F.2d 698, 705 (2d Cir. 1991)).  Nevertheless, Manolov fails to allege plausibly that

BMCC denied him that property interest.  To be sure, Manolov contends that he "was twice

discharged from the class" by Professor Boyle, and that he never was provided with an

opportunity to address this issue.  (Opp. Mem. at 6).  This allegation, however, is belied by

Manolov's admission that he "had to see the head of the Nursing Department to get back

16

[in]to the program" and thereafter was able to re-enroll.  (Attach. at 3).  If anything, his

reinstatement in the program after speaking with the head of the Nursing Department shows

that BMCC's procedural safeguards functioned effectively.

Moreover, although Manolov contends that he later "had to drop" his nursing

classes in the spring 2012 semester, (Attach. at 4), he does not allege that BMCC prevented

him from continuing in the program.  To the contrary, he voluntarily withdrew because he

believed he could not pass the nursing class if Professor Boyle was teaching it.  (Id.).

Manolov therefore does not appear to have adequately pleaded that BMCC deprived him of

the right to attend classes.

Liberally construed, Manolov's papers could be read to allege that he was

"constructively dismissed" from the nursing program.  See Smith v. Guilford Bd. of Educ.,

226 F. Appx. 58, 63 (2d Cir. 2007) ("district court improperly found that [plaintiff]

voluntarily withdrew from" high school where, construing allegations in plaintiff's favor, he

was "effectively forced to withdraw") (internal quotations and emphasis omitted); see also

HB v. Monroe Woodbury Cent. Sch. Dist., No. 11 Civ. 5881 (CS), 2012 WL 4477552, at *9

(S.D.N.Y. Sept. 27, 2012) (suggesting that constructive expulsion is "perhaps legally viable

in theory").  Even if that were so, Manolov does not allege that he sought any form of redress

from BMCC related to his withdrawal from the spring 2012 semester.  He therefore cannot

claim that the process he was afforded was inadequate.

Furthermore, the sole relief that Manolov seeks is an award of damages against

BMCC.  As noted previously, judgments against community colleges that are part of CUNY

are paid by the City of New York.  See Clissuras, 359 F.3d at 82 & n.6; Hester-Bey, 2000

WL 488484, at *3.  In Section 1983 claims, however, "a municipal corporation cannot be

held liable" for the actions of its employees "solely on a theory of respondeat superior."

Hickok v. Orange Cnty. Cmty. Coll., 472 F. Supp. 2d 469, 473 (S.D.N.Y. 2006) (citing

Monell v. Dep't of Social Servs., 436 U.S. 658, 694-95 (1978)).  Instead, to establish the

liability of a municipal corporation, including a public college, a plaintiff "must demonstrate

'a direct causal link between a municipal policy or custom, and the alleged constitutional

deprivation.'"  Id. (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).  Manolov's

factual allegations concern the actions of Professors Boyle and White, but he does not allege

the existence of any "policy or custom" of the College that deprived him of his right to

constitutional due process, nor does he allege any facts from which one could reasonably be

inferred.  Indeed, any such inference would plainly be implausible since Manolov was

permitted to re-enroll in the nursing program after speaking with the head of the department.

Manolov's due process claim therefore must be dismissed.

      D.    State Law Claims

      In addition to the federal claims previously addressed, Manolov asserts two

state law claims against BMCC.  Specifically, Manolov seeks damages for breach of contract

and negligent supervision.  A federal court may exercise supplemental jurisdiction over state

law claims when a federal claim vests the court with subject matter jurisdiction and the state

and federal claims "derive from a common nucleus of operative fact."  United Mine Workers

of Am. v. Gibbs, 383 U.S. 715, 725 (1996).  Nonetheless, a district court "may decline to

exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "Although there is no 'mandatory rule to be applied inflexibly in all cases,' it is clear that 'in the usual case in which all federal-law claims are eliminated before trial,' the balance of factors will weigh in favor of declining to exercise supplemental jurisdiction."  TPTCC NY, Inc. v. Radiation Therapy Servs., 453 Fed. Appx. 105, 107 (2d Cir. 2011) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)); see also Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) ("If the federal law claims are dismissed before trial the state law claims should be dismissed as well.") (internal alterations and quotation marks omitted).

There is no reason for the Court to depart from the usual rule in this case.  To date, there has been no pretrial discovery, nor have there been any conferences with the Court.  Indeed, the only events that have taken place are the filing of the parties' motions.  As BMCC's motion shows, there is no basis for Manolov to prosecute any federal claims in this Court.  Accordingly, because the Court has not invested any appreciable time in this case, it should exercise its discretion by dismissing without prejudice Manolov's state law claims.[5] See Brzak v. United Nations, 597 F.3d 107, 113-14 (2d Cir. 2010).  The Court consequently

---

[5]       I note that there also is no basis for the Court to retain jurisdiction under 28 U.S.C. § 1332.  Although Manolov asserts that the amount in controversy is above the $75,000 threshold, his Complaint establishes that the parties are not diverse.  Manolov is a resident of Brooklyn, New York.  (See Compl. at 1).  BMCC is a "community college" of the City University of New York.  See N.Y. Educ. Law §§ 6202(4), 6203.  Accordingly, both parties are citizens of New York for diversity purposes.  See John & Sal's Automotive Service, Inc. v. Sinclair Refining Co., 165 F. Supp. 518, 522 (S.D.N.Y. 1958) (public corporations are citizens of the state that created them).

should not exercise supplemental jurisdiction over Manolov's state law claims, and BMCC's motion with respect to those claims also should be granted.

III.     Conclusion

For the reasons set forth above, BMCC's motion to dismiss (ECF No. 14) should be granted, and Manolov's boilerplate motion in opposition to BMCC's motion (ECF No. 18) should be denied.

Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be directed to Judge Daniels.  The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:       New York, New York
             December 20, 2012

_____
FRANK MAAS
United States Magistrate Judge

20

Copies to:

Alex M. Manolov
265 Corbin Place
Brooklyn, New York 11235

Andrew J. Rauchberg
Assistant Corporation Counsel
New York City Law Department
Fax: (212) 788-0940